UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.   4:20 CR 56 RWS (JMB) |
| BRANDON SHAW, | ) ) ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 48) AND STATEMENTS (Doc. 49)

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and John Bird, Assistant United States Attorney for said District and, for its response to Defendant's Motion to Suppress Evidence (Doc. 48) and Statements (Doc. 49), states as follows:

### INTRODUCTION

On December 12, 2019, police officers responding to a 911 call lawfully stopped the Defendant, a convicted felon, and found on his person a loaded Taurus make, .40 caliber, semi-automatic pistol. The 911 caller had reported seeing a 'suspicious person' repeatedly walking through her yard with a dangerous instrument, approaching her house and vehicle. The responding officers observed Defendant, who matched the physical and clothing description of the 'suspicious person' as given by the 911 caller, walking on the sidewalk two houses away from the 911 caller's residence. The officers conducted a lawful *Terry* stop on Defendant. During a permissible pat-down search of Defendant for officer safety, Defendant voluntarily informed

officers he had a gun. After being read his *Miranda* rights, Defendant then unambiguously admitted a second time to possession of the gun, stating "Yes. I know I had it and I'm not supposed to have it. It's my girl's gun though." Nonetheless, Defendant now maintains he is entitled to suppress the gun as well as his statements. Defendant's arguments are meritless. Nothing in Defendant's motion to suppress changes the fact that the gun and each of Defendant's statements were lawfully obtained. Consequently, the Defendant's motion to suppress evidence and statements should be denied.

## **FACTS**[1]

On December 12, 2019 at 1:34 PM, St. Louis Metropolitan Police Department (SLMPD) received a 911 call from a concerned citizen, S.N., reporting a 'suspicious person' walking through her yard with a bar or stick at 4232 West Cook Avenue, which is located in the City of St. Louis within the Eastern District of Missouri. S.N., who stated that she lived alone with her son, saw the male on her cameras repeatedly walking through her yard. S.N. further stated that she was in her car, parked in front of her house and pulled off when the male walked towards her vehicle with a bar. Upon driving off, S.N. stated that the subject walked back on the side of her house. S.N. described the subject as a black male with medium brown to dark skin, wearing black pants and

---

[1] The Government anticipates that the following facts will be established at the evidentiary hearing. This response, including the facts in it is not offered as a comprehensive statement of the Government's case. The purpose of this response is to provide an outline of the Government's evidence to be presented at the motion hearing. It is intended to be a guide for the Court and is not intended to be in the nature of a Bill of Particulars that would fix and bind the Government to a set theory of proof or facts.

black hood, which was covering his head.  S.N. requested the assistance of police and provided her name, address and telephone number.

Minutes later, SLMPD Officers Benjamin McCabe (PO McCabe) and Brandon Gubricky (PO Gubricky) responded to the call and observed a subject, later identified as Defendant, wearing all dark clothing, having a medium complexion, walking on the sidewalk in front of 4224 West Cook, just two houses from S.N.'s residence.  Defendant was walking eastbound, on the same side of the street as and in a direction away from S.N.'s residence.   Defendant was wearing black pants, a black jacket, with a black hat covering his head.  Because Defendant matched the physical and clothing description of the man lurking outside S.N.'s house with a bar, the officers curbed their marked police vehicle and exited.  Upon approaching Defendant for a pedestrian check, the officers stated, "Police stop!"  PO Gubricky informed Defendant that he was being detained pending investigation into the particulars of the 911 call.  Due to S.N. stating that the suspicious male was armed with a bar or stick, PO Gubricky, for officer safety reasons, performed a pat-down search of Defendant for weapons.  During the pat-down search of Defendant, Defendant spontaneously stated, "Ay man, I got a gun!"   For safety reasons, Defendant was placed in handcuffs.

PO McCabe retrieved a firearm from Defendant's front right waistband. A closer examination of the firearm revealed it to be a black Taurus make, PT 840 model, .40 S&W caliber, semi-automatic pistol, bearing serial number SIM26130.  The firearm was loaded with one live round in the chamber and fourteen live rounds in the magazine.

A computer check revealed that Defendant was a convicted felon.  Defendant had been previously convicted of the following felonies:   Unlawful Use of a Weapon-Carrying a Concealed

3

Weapon (2001) from the Circuit Court of the City of St. Louis, Missouri, under Case Number 22991-02094-01; and two counts of Assault in the First Degree, and two counts of Armed Criminal Action (2001) from the Circuit Court of the City of St. Louis, Missouri, under Case Number 22011-01498.  PO Gubricky advised Defendant that he was being placed under arrest for "Unlawful Possession of a Firearm."  PO Gubricky further advised Defendant of his Constitutional Rights per *Miranda*.  Defendant stated that he understood his rights.  Afterwards, PO Gubricky asked Defendant if he was aware that he was a Missouri State convicted felon and thereby not allowed to possess any firearms.  Defendant responded, "Yes. I know I had it and I'm not supposed to have it.  It's my girl's gun though."

## ANALYSIS

### I.     Defendant's Seizure was Constitutionally Proper

"The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony." *United States v. Watson,* 423 U.S. 411, 417 (1976) (quoting *Carroll v. United States,* 267 U.S. 132, 156 (1925)); *see Gerstein v. Pugh,* 420 U.S. 103 (1975); *United States v. Czech,* 105 F.3d 1235, 1238 (8th Cir. 1997); *see also* R.S. Mo. 544.216 (stating a municipal law enforcement officer may arrest on view without a warrant any person about whom he has reasonable grounds to believe violated any law of the State of Missouri). To determine whether a search and seizure are reasonable, the Court analyzes first whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified interference in the first place. *Terry v. Ohio,* 392 U.S. 1, 18 (1968). In justifying an intrusion, an officer must be able to refer to specific and articulable facts, which, considered as a whole with rational inferences drawn from such facts, reasonably

4

warrant the intrusion. *Id.* at 21. The inquiry is based upon an objective standard, and turns on whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 22 (citing *Carroll v. United States,* 267 U.S. 132 (1925)). An officer is justified to search a seized subject when the officer has reasonable grounds to believe such individual is armed and dangerous, and it is necessary for the protection of himself and others to swiftly neutralize the threat of harm. *Id.* at 29.

### a. The Investigative Stop Was Based On Reasonable Suspicion.

An officer has reasonable suspicion that permits an investigative stop when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California,* 572 U.S. 393, 396–97 (2014) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)). The reasonable suspicion required to justify a stop depends on the content of the information received by police and its degree of reliability. *Id.* (citing *Alabama v. White,* 496 U.S. 325, 330 (1990)). "While reasonable suspicion must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Fuse,* 391 F.3d 924 (8th Cir. 2004).

The Eighth Circuit has previously held a *Terry* stop to be valid where a 911 caller merely requests a police response, gives accurate identifying information about a suspect, and indicates that they may intend to commit criminal acts. *United States v. Lawhorn*, 735 F.3d 817, 819–22 (8th Cir. 2013) (upholding a *Terry* stop solely on the basis of a 911 caller identifying a "black male sitting in a red Ford Bronco in a hotel parking lot [who] looked like he wanted to commit a robbery").

5

Under this standard, the investigative stop was clearly lawful. Based upon the 911 call from S.N., officers were responding to a report of a "suspicious person" walking around a woman's residence and approaching her car while carrying a bar or stick. S.N. gave a physical and clothing description of the individual, stated that she lived alone with her son, and requested that the police respond. S.N. gave her name, address and phone number. Defendant was stopped walking on the sidewalk just two houses away from the caller's residence. PO Gubricky observed that Defendant matched the physical and clothing description provided by the caller.

On this basis, the officers had reasonable suspicion to stop the Defendant. The caller identified herself, *see United States v. Kent*, 531 F.3d 642, 648–49 (8th Cir. 2008) (holding that informants willing to identify themselves "are more reliable than anonymous tipsters because the police can hold them responsible for false information"), gave a detailed and accurate description of the individual, *see United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) ("[A] stop typically is justified when a suspect matches the description of a person involved in a disturbance near in time and location to the stop."), and requested the police respond due to the individual's suspicious activity, *see United States v. Wheat*, 278 F.3d 722, 732 (8th Cir. 2001) (finding relevant in the reasonable suspicion context the urgency of a 911 tip and how quickly police responded to it). Because the 911 caller had provided information to police that was reliable, and Defendant matched the description of the suspicious individual provided by the caller, officers had sufficient reasonable suspicion to lawfully stop Defendant.

### b. Officers Conducted a Proper Pat-Down of Defendant for Weapons and Seized the Gun.

The Eighth Circuit has also held that, "[o]nce a suspect is legally stopped, 'an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-

6

down search for weapons to ensure officer safety.'" *United States v. Horton*, 611 F.3d 936, 940–41 (8th Cir. 2010) (quoting *United States v. Davis*, 457 F.3d 817, 822 (8thCir. 2006)). Such a belief can be justified merely on the basis of the suspicion of a caller who identifies a suspect to the police. *Id*. at 939; *see also United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) (holding that a *Terry* stop was justified on the basis of the police being told that someone matching the defendant's description had a weapon). During a *Terry* stop, officers are permitted to check for weapons and to take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221 (1985). Protective searches allow for the use of handcuffs. *United States v. Miller*, 974 F.2d 953 (8th Cir. 1992).

As previously established, Defendant was stopped pursuant to a lawful *Terry* stop. During the lawful stop, a pat-down search for weapons was conducted for officer safety. The 911 caller had stated that the individual was carrying a bar or stick. Although no weapon was visible in Defendant's hand at the time the officers initially encountered him, the officers had reason to believe that any such weapon was now concealed on Defendant's person or in his clothing. For safety reasons, the officers were thus justified in conducting a pat-down search of Defendant for weapons.

## II.     Defendant's Statements Were Lawfully Obtained.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), any time a person is subject to custodial interrogation a law enforcement officer must, prior to commencing questioning, advise the person of his right to be free from compulsory self-incrimination and of his right to have the assistance of counsel. *United States v. Axsom,* 289 F.3d 496, 500 (8th Cir. 2002). A suspect is deemed "in

custody" and entitled to *Miranda* warnings only when he has been formally arrested or when his freedom of action is curtailed to a degree associated with formal arrest. *United States v Galceran,* 301 F.3d 927, 929 (8th Cir. 2002) (citing *Berkemer v. McCarthy*, 468 U.S. 420, 440 (1984)). "Custodial interrogation" means questioning initiated by the law enforcement officer after the suspect has been taken into custody. *Illinois v. Perkins,* 496 U.S. 292, 297 (1990). If, after being given *Miranda* warnings, a defendant agrees to make a statement in response to questioning, the Government must show that the waiver was voluntary, knowing, and intelligent for the statement to be admissible at trial. *Colorado v. Connelly,* 479 U.S. 157 169-70 (1986); *North Carolina v. Butler,* 441 U.S. 369, 375-76 (1979); *see United States v. Ingram,* 839 F.2d 1327, 1329 (8th Cir. 1988) (holding waiver voluntary, knowing, and intelligent where "defendant was informed of his rights, stated that he understood them, and then chose to speak to the officers").

However, "[v]oluntary statements of any kind are not barred by the Fifth Amendment." *Miranda,* 384 U.S. at 478. Moreover, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Williams v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009).

### a. Defendant's Spontaneous Statements are Admissible

*Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer. *United States v. Hawkins*, 102 F.3d 973, 975 (8th Cir. 1996). The officer may ask the detainee questions in order to dispel or confirm his suspicions, but questioning is limited in scope to the circumstances that justified the stop. *United States v. Cummins*, 920 F.2d 1206, 1209 (8th Cir. 1990).

Here, during a permissible pat-down search for weapons, Defendant spontaneously stated

8

that he was in possession of a firearm. Defendant's statement, "Ay man, I got a gun!" was not made in response to any police questioning and was therefore a spontaneous statement made by Defendant . PO Gubricky did not initiate this conversation with Defendant. This voluntary statement by Defendant does not run afoul of *Miranda* and is admissible as a result.

### b. Defendant's Post Arrest Statements Are Admissible

Following the Defendant's spontaneous incriminating statement, PO Gubricky seized the firearm from Defendant's waistband and immediately advised him of his *Miranda* rights. Defendant indicated he understood his rights and voluntarily waived them. When PO Gubricky asked if Defendant was aware that he was a convicted felon and could not possess a firearm, Defendant replied, "Yes. I know I had it and I'm not supposed to have it. It's my girl's though." Because Defendant was properly advised of his Miranda rights and waived them before making this statement, it is admissible.

A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444; *see United States v. Ingram,* 839 F.2d 1327, 1329 (8th Cir. 1988) (holding waiver voluntary, knowing, and intelligent where "defendant was informed of his rights, stated that he understood them, and then chose to speak to the officers"). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Williams v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009).

Here, upon Defendant making a spontaneous incriminating statement admitting to possession of a gun, PO Gubricky immediately seized the firearm and advised Defendant of his *Miranda* rights. Defendant was advised of each of his Miranda rights per MPD FORM GEN-

9

19, which Defendant stated he understood, and which is set out below:

> **METROPOLITAN POLICE DEPARTMENT**
> **CITY OF ST. LOUIS**
> **WARNINGS – CONSTITUTIONAL RIGHTS**
>
> 1) YOU HAVE THE RIGHT TO REMAIN SILENT.
> 2) ANYTHING YOU SAY CAN AND WILL BE USED AGAINST YOU IN COURT.
> 3) YOU HAVE THE RIGHT TO A LAWYER AND TO HAVE HIM WITH YOU WHILE YOU ARE BEING QUESTIONED.
> 4) IF YOU CANNOT AFFORD TO HIRE A LAWYER, ONE WILL BE APPOINTED FOR YOU BEFORE ANY QUESTIONING IF YOU SO DESIRE.

Defendant, who was 38 years old and had been arrested on numerous prior occasions, indicated he understood his rights. *See United States v. Larry*, 126 F.3d 1077, 1079 (8th Cir. 1997) (noting defendant's age of 31 years as a fact indicating defendant's waiver of rights was voluntary, knowing, and intelligent); *United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000) (citing defendant's experience with the criminal justice system as evidence that waiver and statement were voluntary); *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir. 1985) (same). Furthermore, there is no evidence to suggest that the officers in any way coerced Defendant to waive his rights and make a statement, or made any promises to Defendant in exchange for his waiver and statement. *See generally Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986)

(holding that coercive police activity is prerequisite to finding involuntary confession). When PO Gubricky asked if Defendant was aware that he was a convicted felon and could not possess a firearm, Defendant replied, "Yes. I know I had it and I'm not supposed to have it. It's my girl's though." Because Defendant was properly advised of his Miranda rights and waived such rights, this statement should be admissible.

## CONCLUSION

For the reasons stated, the Government respectfully requests that the Court deny Defendant's Motions to Suppress Evidence (Doc. 48) and Statements (Doc. 49) in their entirety.

Respectfully submitted,

JEFFERY B. JENSEN
United States Attorney

_s/ John T. Bird_
JOHN T. BIRD, #37802MO
Assistant United States Attorney
111 South 10th Street
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing was served by way of this Court's electronic mailing system, this 23rd day of July 2020, to Mr. John M. Lynch, attorney for Defendant.

_s/ John T. Bird_
JOHN T. BIRD, #37802MO
Assistant United States Attorney